IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTINA LYNN HANING,

      Plaintiff,

                                 Civil Action 2:14-cv-573
      v.                            Judge James L. Graham
                                 Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Christina Lynn Haning, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Plaintiff, Christina Lynn Haning, filed her application for Disability Insurance Benefits and Supplemental Security Income on August 31, 2011. (R. at 274–80.) Plaintiff alleged a disability onset date of April 20, 2009. (R. at 274, 281). Plaintiff's application was denied

initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Vlerie A. Bawolek ("ALJ") held a video hearing on May 28, 2013, and a supplemental video hearing on October 9, 2013.  At the first hearing, Plaintiff, represented by counsel, and two medical experts, Marshall D. Tessnear, Ph.D., and Judith Brendemuehl, M.D., appeared and testified.  Vocational expert William Tanzey also appeared, but did not testify.  At the close of the first hearing, the ALJ referred Plaintiff for consultative examinations with regard to both her physical and her mental impairments.  Plaintiff, represented by counsel, Drs. Tessnear and Brendemuehl, and vocational expert Olen Dodd ("VE") appeared and testified at the October 9, 2013 hearing.

On November 8, 2013, the ALJ issued her decision finding that Plaintiff has not been disabled within the meaning of the Social Security Act.  (R. at 9-30.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff asserts that the ALJ erred in finding that her substance use was a contributing factor material to the determination of disability.  (ECF No. 14.)  Plaintiff also posits that the ALJ failed to sufficiently account for her moderate limitations in concentration, persistence, or pace.  The Undersigned limits discussion in this Report and Recommendation to evidence bearing on the two contentions of error Plaintiff raises in her Statement of Errors.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

At the first hearing, Plaintiff first testified about her physical problems and limitations. She indicated that she was not currently taking pain medications because of money reasons, but that the medication relieved her pain unless she "over-did it."  (R. at 47-48.)  Plaintiff also testified that she became stressed and experienced anxiety when she did not have the money to continue taking hormone pills.  (R. at 52.)  She added that she cried every day.  (R. at 53.)

### B.    Testimony of Medical Expert Judith Brendemuehl, M.D.

At the first hearing, Dr. Brendemuehl testified that based upon the current record, she was unable to opine whether Plaintiff had a physical impairment that met or equaled the listings or arrive at a residual functional capacity ("RFC") determination.  She noted Plaintiff's injuries and surgery.  Dr. Brendemuehl recommended that Plaintiff be sent for a new physical consultative examination and that any updated records be obtained.  (R. at 40-42.)

At the supplemental hearing,  Dr. Brendemuehl opined that the updated medical records did not show any impairments that met or equaled the listings.  (R. at 60.)  She pointed out that the examiner noted that Plaintiff's breath smelled of alcohol and that she had consumed three beers before coming to the examination.   Dr. Brendemuehl opined that the examination should not have proceeded because it was unclear how much Plaintiff's inebriation colored her ability to perform during the examination.   Dr. Brendemuehl opined that based upon the record evidence, including the objective testing results, Plaintiff had the capacity to perform a limited range of light work, with no climbing ladders, ropes, or scaffolds; occasional stair climbing; occasional

stooping and crouching; and no kneeling, crawling, heights, and hazardous machinery; and avoidance of concentrated exposure to heat, cold, and vibration.  (R. at 61-63.)

**C.      Testimony of Medical Expert Marshall D. Tessnear, Ph.D.**

At the first hearing, Dr. Tessnear indicated that with regards to Plaintiff's mental impairment issues, the October 2011 consultative evaluation constituted the only significant evidence.  Dr. Tessnear noted that diagnoses of alcohol abuse, adjustment disorder, and personality disorder not otherwise specified.  Dr. Tessnear further noted that the examiner pointed out that Plaintiff's functional limitations are going to vary with alcohol limitations and added that this means "if [alcohol is] involved, then there's going to more limitations."  (R. at 44.)  Dr. Tessnear opined that Plaintiff's activities of daily living "appear to be more than mildly impaired" and that her "social functioning is at least moderately impaired but again, that would vary according to the alcohol use which does appear to be material in this case."  (*Id*.)  Upon cross-examination, Dr. Tessnear stated that Plaintiff's "alcohol use and personality disorder together could certainly account for impulsive behavior."  (R. at 45.)  He further indicated that although he did not believe more testing was necessary, he thought it would be beneficial to obtain a more recent consultative examination to obtain "a good history and mental status."  (R. at 46.)

At the supplemental hearing, Dr. Tessnear again opined that the updated medical records did not show any mental impairments that met or equaled the listings.  (R. at 64.)  Dr. Tessnear testified that the diagnosed mental impairments included alcohol abuse, personality disorder, post-traumatic stress disorder (PTSD), and bipolar disorder.  Dr. Tessnear opined that the diagnosis of bipolar was unsupported in the record and that a diagnosis of mood disorder or

4

affective disorder was more appropriate (R. at 64-65.)  Dr. Tessnear next noted the conflicting

evidence regarding Plaintiff's social evidence, citing the evaluations of Drs. Sarver and Griffith.

Dr. Tessnear opined that the amount of alcohol Plaintiff consumed "is going to impair a person's

social functioning and that they're likely to be more impulsive, more contentious."  (R. at 65-

66.)  He added that he believed that Plaintiff's social functioning would still be moderately

impaired even in the absence of alcohol abuse.  Dr. Tessnear therefore opined that Plaintiff

should be limited to minimal contact with others.  Dr. Tessnear further opined that "in terms of

concentration, persistence and pace . . . there may be some mild to moderate impairment . . . but

all evaluations seemed to indicate that she would be capable of at least simple, repetitive types of

job activities."  (R. at 66.)  Dr. Tessnear added that Plaintiff would not have any problems with

work stressors so long as she was limited to simple, repetitive types of work activity involving

minimal interactions with others.

      Upon cross-examination at the supplemental hearing, Dr. Tessnear first indicated that it

would be "hard to say" whether the record reflected a period of sobriety to support that she

would have an improved function without the influence of drug or alcohol.  (R. at 67.)  He then

explained that none of the medical exhibits reflected that Plaintiff had significant medical

impairment.  He added that Plaintiff's credibility was in question given that the record reflected

that she had not been truthful with some of the examining physicians.  Dr. Tessnear noted that

Plaintiff was not reported to be intoxicated during her examination with Dr. Griffith.  (R. at 67-

68.)

**D.     Testimony of Vocational Expert Olen Dodd**

The VE testified that if he were to assume an individual of the same age, education, and work experience as Plaintiff who had the RFC that the ALJ ultimately determined Plaintiff would have in the absence of alcohol, the individual could perform work such as a bottle packer, a battery polarity tester, and an electrode cleaner.  (R. at 69-70.)  The VE added that all three jobs of the representative jobs he identified would offer an at-will sit/stand option.  Upon cross-examination, the VE testified that someone with marked impairment in dealing with people and in their ability to deal with changes in workplace situations and routine, defined as more than moderate and less than extreme, would still be able to perform the representative jobs he identified.  (R. at 75.)  The VE further indicated that the individual could not perform the jobs, however, if she was consistently off task twenty percent of the time.  (R. at 75-76.)

## III.     RELEVANT MEDICAL RECORDS

**A.     William C. Dalton, M.D.; Family Healthcare, Inc.; and Cherese Fretwell, N.P.**

Plaintiff's treatment notes from October 2008 reflect that Plaintiff reported experiencing anxiety and difficulty falling asleep.  Dr. Dalton described Plaintiff as well-appearing and oriented and as having a euthymic mood, normal affect and unimpaired thought processes.  (R. at 408.)  He diagnosed Plaintiff with headache syndromes, depression, dysthymic disorder, persistent insomnia, and generalized anxiety disorder and prescribed medication.  (R. at 406-07.)

Treatment notes from December 2009 reflect that Plaintiff presented to Dr. Dalton with a chief complaint of dysthymic disorder.  (R. at 412.)  He again described Plaintiff as well-appearing and oriented and as having a euthymic mood, normal affect and unimpaired thought

processes.  (R. at 411.)  Dr. Dalton diagnosed insomnia and headache syndromes and prescribed

medication.  (R. at 412-13.)

In April 2011, Plaintiff presented to Beverly Phillips at Family Healthcare, Inc.  Plaintiff

reported increased pain due to shoveling black top into pot holes.  Nurse Practitioner Phillips

assessed depression, anxiety, and substance abuse and noted that she could not prescribe pain or

nerve medications given that Plaintiff was drinking and not in a rehabilitation program.  (R. at

416.)

Plaintiff again presented to Nurse Practitioner Phillips in September 2011.  (R. at 415.)

Nurse Practitioner Phillips described Plaintiff as tearful and noted that Plaintiff complained of

having no money and being out of her medications for two months.  She assessed depression,

anxiety, and sinus disorder.  (*Id*.)

Plaintiff presented to Nurse Practitioner Cherise Fretwell in March 2012 to establish

medical care.  (R. at 454.)  Plaintiff reported that she had been out of all of her medications for

one week.  (*Id*.)  Upon examination, Nurse Practitioner Fretwell observed no psychological

symptoms and described Plaintiff's appearance as normal; alert, oriented as to time, place, and

person; and in no acute distress.  (R. at 455.)  Nurse Practitioner Fretwell continued Plaintiff's

medications.

**B.      Gary Sarver, Ph.D.**

On October 20, 2011, Plaintiff presented to Dr. Sarver for a consultative examination.

Plaintiff reported to Dr. Sarver that she could not work because of her pain.  Plaintiff reported

that she had a few friends and that she liked to be with people.  (R. at 427.)  She reported abusing

alcohol in the past and that she uses every day she can get it.  Dr. Saver observed that she

7

smelled of alcohol.  Plaintiff said that she left her seventeen-year employment after a motor vehicle accident and that she had never been fired from a job.  She added that she gets along with supervisors and coworkers "fine," but the public "not so well."  (*Id.*)  In terms of daily activities, Plaintiff reported that her activities revolve around cooking, dishes, laundry, shopping, bill paying, watching television, and listening to the radio.

Upon a mental status examination, Dr. Sarver observed that Plaintiff was cooperative, interactive, and responded appropriately.  He further noted that Plaintiff was interested, motivated, and displayed appropriate attentional pace, persistence, and concentration.  He described Plaintiff's speech and language as within normal limits.  Dr. Sarver described her mood as "broodingly resentful, but otherwise within normal limits."  (R. at 428.)  He noted some emotional lability, but found no motoric indications of depression or anxiety.  Dr. Sarver further noted that Plaintiff was alert, oriented, and functionally intact.

Dr. Sarver assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 51[1] and opined that Plaintiff's "functional rating is likely to improve significantly in the absence of alcohol abuse."  (R. at 431.)  Within his functional assessment, Dr. Sarver opined that Plaintiff would have no difficulty in understanding, remembering, or carrying out simple instructions, but would experience more difficulties as the instructions became more complex.  He added that Plaintiff's "alcohol abuse and affective instability is likely to interfere with her ability to carry out complex job instruction."  (R. at 432.)  Dr. Sarver further noted that "there were no

---

[1]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range.  A GAF score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

indications . . . of [Plaintiff] having difficulty with attentional pace or persistence," but that her alcohol abuse and affective instability "may sporadically make it difficult for her to perform multi-step tasks." (*Id*.)  He also opined that it was likely that Plaintiff would "eventually encounter contentious relationships with supervisors and coworkers in the work setting," but that she was "likely to respond better interpersonally in the absence of alcohol abuse." (*Id*.)  Finally, Dr. Sarver opined that Plaintiff is "likely to have difficulty adaptively managing normative work pressures" and that the difficulty "is likely to vary with her alcohol abuse." (*Id*.)

**C.**     **Jennifer Swain, Psy.D, & Leon D. Hughes, M.D.**

On October 28, 2011, upon review of the file, Dr. Swain opined in her mental RFC assessment that Plaintiff retained the ability to "sustain routine tasks in a setting where a rapid pace is not required and a predictable schedule of breaks is offered." (R. at 89.)  In reaching this conclusion, Dr. Swain noted Dr. Sarver's observation that Plaintiff had no problems with attentional pace or persistence during the examination and also his opinion that affective instability may sporadically make it difficult to perform multi-step tasks.  Dr. Swain further opined that Plaintiff could relate to others superficially and work in a relatively static setting where no more than daily planning is required.  (*Id*.)

On November 13, 2011, reviewing physician Dr. Hughes opined that Plaintiff retained the ability to carry out very short and simple instructions and make simple work related decisions, as well as to think, communicate, act in her own interest, and pursue her usual activities.  (R. at 92.)

**D.**     **Judith Brown, M.D.**

9

On November 1, 2011, Plaintiff presented to Dr. Brown for a consultative examination. Dr. Brown noted that Plaintiff's intellectual functioning appeared normal, that she was able to follow simple commands and instructions without difficulty, and that her conversational speech was heard and understood without difficulty. (R. at 435.)

**E.     H.L. Krupadev, M.D.**

On June 27, 2013, Dr. Krupadev examined Plaintiff in connection with her claims for disability benefits. Plaintiff reported that she had significant problems with anxiety, depression, and insomnia. She further reported that she did not have a history of drug abuse or alcohol dependance and denied a history DWIs. She did however, acknowledge that she drank thirty beers per week on average. (R. at 461-62.) Dr. Krupadev noted that Plaintiff denied "any mental impairment or capacity for understanding and memory, sustained concentration and persistence, social interaction and adaptation." (R. at 461.) Dr. Krupadev described Plaintiff as "well oriented" and found her mental status and behavior to be normal during the examination with the exception of frequent crying spells. (R. at 462.) Dr. Krupadev further noted that Plaintiff's breath "profusely smells of alcohol," and that she had reported consuming three beers that day. (R. at 462.) Dr. Krupadev concluded that Plaintiff "has significant psychiatric problems, related to depression and possible alcohol dependency . . . [that would] need further evaluation and management." (R. at 463.)

**F.     Brian Griffith's, Psy.D.**

On July 10, 2013, Plaintiff presented to Dr. Griffith for a consultative examination. Dr. Griffith noted that Plaintiff understood the nature and purpose of the evaluation. Plaintiff reported that she worked for seventeen years as a general foreman/industrial electrician, but that

she was laid off after her car accident because she could no longer perform her job duties.  (R. at 486.)  She also reported experiencing depression and crying every day.  She added that she has suicidal ideation that she would not act on, poor sleep, low energy levels, and a temper.  (*Id*.)  Plaintiff then described experiencing "bad" mood swings, irritability, and agitation and displays angry outbursts with yelling and screaming.  (*Id*.)  She reported racing thoughts and described a history of impulsive decision making in relationships.  When asked about manic-like episodes, Plaintiff reported that people at work described her as going "a hundred miles an hour."  (*Id*.)  Plaintiff next reported symptoms of anxiety, including panic disorder, and also symptoms of PTSD.

With regard to activities of daily living, Plaintiff reported that she lived alone in a camper and relies upon food stamps and assistance from family.  She reported that she has no friends and showers at her neighbor's home once a week.  She said has no electricity and spends her time doing jigsaw puzzles.  Plaintiff indicated that she can do light household chores, fix a meal, count money, and pay bills.

Upon a mental status examination, Dr. Griffith reported that Plaintiff appeared to be an emotional labile person.  He noted that she dressed appropriately, with adequate grooming and hygiene and displayed no unusual behaviors.  Dr. Griffith described Plaintiff's speech as "somewhat pressured," but added that "she displayed no loose associations, flight of ideas, or delusional beliefs" and described her as "of average intelligence."  (R. at 487.)  Dr. Griffith noted that Plaintiff did not display indications of anxiety but that she reported symptoms associated with panic disorder and PTSD.  He found Plaintiff's mental content to be normal and opined that "[h]er complaints of limited energy and fatigability might be suggestive of

11

somatization." (*Id*.) Dr. Griffith further described Plaintiff as "alert and responsive and oriented to time, place, person, and situation," adding that she was not confused. (R. at 488.)  He noted that Plaintiff was able to recall four digits forward and three backwards but refused to even try to perform serial sevens, stating that "I didn't even go to the tenth grade . . . so I'm not going to try." (R. at 488.)  He found that her insight and judgment were normal.

Dr. Griffith diagnosed bipolar, panic disorder, PTSD, and alcohol abuse.  He indicated that he arrived at these diagnoses from Plaintiff's self-report, which he stated appeared to be reliable. (R. at 488-89.)  Dr. Griffith concluded that Plaintiff would require assistance managing personal funds given her alcohol abuse. (R. at 489.)

In his functional assessment, Dr. Griffith noted that Plaintiff "had no difficulty following simple instructions," but that she "might have problems remember and carrying out basis work-related activities in a timely and consistent manner." (*Id*.)  Noting Plaintiff's difficulty performing serial sevens and counting backwards by threes, Dr. Griffith stated that "[i]t is possible that her emotional difficulties interfere with her ability to pay attention and concentrate, especially over extended periods of time." (*Id*.)  He further opined that Plaintiff's anxiety, depression, mood instability, agitation and irritability "may interfere with task persistence and pace as well." (R. at 489-90.)  Finally, Dr. Griffith opined that stress and pressures associated with day-to-day work activity might increase Plaintiff's depression, anxiety, and panic attacks, as well as exacerbate her symptoms with PTSD, which he indicated would interfere with her ability to get along with others, slow work performance, and trigger a manic-like episode. (R. at 490.)  On the Medical Source Statement that Dr. Griffith completed, he indicated that even if

12

Plaintiff stopped abusing alcohol, "she would still have significant emotional limitations" and that his "ratings would remain the same."  (R. at 492.)

## IV.   THE ADMINISTRATIVE DECISION

At step one of the sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since alleged onset date of April 26, 2009, the original alleged onset date of disability.  At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: history of compression fractures; degenerative joint disease of the right ankle; affective disorder/depression/dysthymic disorder/adjustment disorder; post traumatic stress disorder/generalized anxiety disorder; personality disorder; and alcohol abuse.  (R. at 12.)  The ALJ further found that if Plaintiff stopped her substance abuse, she would not have an impairment or combination of impairments that met or medically equaled

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

13

one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18.)

In discussing the Part B Listing Criteria, the ALJ made the following finding:

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties if the alcohol were stopped.  Regardless of the substance abuse, [Plaintiff's] concentration, persistence, and pace are only moderately limited.  The undersigned notes independent consultative examiners consistently observed [Plaintiff] with appropriate concentration, persistence, and pace, and had no difficulty following simple instructions.  Further, while [Plaintiff] endorsed some problems completing tasks, she indicated she could follow directions.

(R. at 19-20 (internal citations to the record omitted).)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After consideration of the entire record, the undersigned finds that based on all of the impairments, including the substance abuse disorder, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] must avoid all hazards, including heights and dangerous machinery, and must avoid concentrated exposure to extreme heat, extreme cold, and vibrations. [Plaintiff] cannot climb ladders, ropes, or scaffolds, kneel or crawl and can occasionally climb ramps and stairs, balance, stoop, or crouch.  [Plaintiff] should have only minimal contact with others, including the public, co-workers, and supervisors.  [Plaintiff] requires repetitive simple work with few changes in routine.  Due to [Plaintiff's] combination of impairments, she would be off task more than 20% of the workday.

(R. at 15).  Relying on the VE's testimony that Plaintiff could not perform jobs existing in significant numbers in the national economy with this RFC, the ALJ concluded that a finding of "disabled" was appropriate.  (R. at 18.)

 In her subsequent consideration of the materiality of Plaintiff's substance abuse, the ALJ concluded that Plaintiff would have the same RFC, but with the exclusion of the limitation that she would be off task during the workday.  (R. at 21.)

In formulating this RFC, the ALJ found Plaintiff's allegations concerning both her mental and physical impairments to be less than credible.  (R. at 22.)  With regards to her mental

14

impairments, the ALJ noted that Plaintiff's "treatment for these conditions is rather sparse," that the conditions were "conservatively treated with medication," and that Plaintiff "never sought or received treatment from a specialist, such as a psychiatrist or psychologist."  (R. at 24.)  The ALJ further stated that the consultative examinations by Drs. Sarver and Brown were essentially normal, adding that Dr. Brown observed no significant evidence or alcohol inebriation or psychological deficiencies on examination.  She also pointed out that when Plaintiff established treatment in March 2012, the records failed to document inebriation and also showed an essentially normal presentation.  (R. at 24.)  Finally, the ALJ pointed out that Plaintiff offered inconsistent statements regarding her substance abuse history, which she found to reflect poorly on Plaintiff's credibility.  (R. at 25.)

The ALJ also considered the record opinions concerning Plaintiff's mental impairments. The ALJ accorded "significant weight" to state-agency reviewing physicians' Drs. Swain's and Dr. Voyten's opinions as to Plaintiff's capacity in the absence of alcohol, noting that the opinions were consistent with and supported by the record evidence.  (R. at 27.)  The ALJ similarly credited Dr. Sarver's opinion with "significant weight," noting that he had an opportunity to examine Plaintiff and that his opinion was consistent with the Dr. Tessnear's opinion.  (R. at 28.)  The ALJ assigned "little weigh[t]" to Dr. Griffith's opinion, explaining that it was inconsistent with his own examination findings and record evidence that showed minimal treatment for the mental impairments.[3]  (R. at 28.)  The ALJ added that Dr. Griffith failed to adequately address the role of Plaintiff's alcohol problem.  (*Id*.)  The ALJ accorded Dr.

_____

[3]Earlier in her Decision, the ALJ stated that she accorded Dr. Griffith's opinion "significant weight when considering the effects of [Plaintiff's] mental impairments, especially substance abuse."  (R. at 16.)

15

Tessnear's opinion the "greatest weight" when considering Plaintiff's mental impairments in the absence of substance abuse.  (*Id*.)  The ALJ noted Dr. Tessnear's status as an expert on psychological impairments and found his opinion to be "balanced, objective, and consistent with the record as a whole."  (*Id*.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the state and national economy.  (R. at 29-30.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff advances two contentions off error.  Plaintiff first asserts that the ALJ erred in finding that her mental impairments were not disabling if she stopped alcohol abuse.  Plaintiff next submits that the ALJ erred in crafting an RFC that fails to accommodate the moderate limitations in concentration, persistence, or pace that the ALJ found. The Undersigned considers Plaintiff's contentions of error in turn.

## A.   Consideration of Plaintiff's Alcohol Use

Within this contention of error, Plaintiff asserts that the ALJ erred in assessing the materiality of her alcohol abuse.  "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  "The Commissioner's regulation explains that '[t]he key factor' in determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2014) (quoting

17

20 C.F.R. § 404.1535). "In practice, . . . an ALJ [may] look at a claimant's periods of sobriety and compare those periods to times when the claimant was abusing substances, in order to make this evaluation." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011) (citation omitted). Alternatively, when a period of sobriety or abstinence is absent, an ALJ may rely upon "the opinion of an acceptable medical source . . . regarding materiality as long as the acceptable medical source provides support for their opinion." Soc. Sec. Ruling 13–2p at Section 6.c.1, 2013 WL 621536, at *9 (effective Mar. 22, 2013). "[T]he claimant continues to have the burden of proving disability throughout the . . . materiality analysis." (*Id*. at *4.)

The Undersigned concludes that the record evidence supports the ALJ's conclusion that Plaintiff has failed to satisfy her burden to demonstrate that her alcoholism materially contributed to her disability. As the ALJ pointed out, Dr. Tessnear concluded that Plaintiff's alcoholism was material. (Tessnear Testimony, R. at 44 ("[I]f [alcohol is] involved, then there's going to more limitations."). Consultative examiner Dr. Sarver similarly opined that Plaintiff's "functional rating was likely to improve significantly in the absence of alcohol abuse," adding although she showed no indications of difficulty with attentional pace or persistence, her alcohol abuse and affective instability "may sporadically make it difficulty for her to perform multi-step tasks." (R. at 431.)

Further, as the ALJ points out, despite Plaintiff's endorsement of disabling mental impairments, her treatment for these conditions is sparse, conservative, and she did not seek or receive treatment from any specialists. *See Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as

relevant the fact that [the claimant's] medical records did not indicate that [claimant] received

significant treatment . . . during the relevant time period."); *cf.* Soc. Sec. Ruling 13–2p at Section

9.d.iii, 2013 WL 621536, at *9 (noting that "a record of multiple hospitalizations, emergency

room visits, or other treatment for the co-occurring mental disorder[s]—with or without

treatment for [alcoholism]—is an indication that the [alcoholism] may not be material").

     Moreover, the ALJ correctly points out that the records reflect essentially normal mental

examination findings in the absence of documentation of inebriation. *See, e.g.*, (R. at 411-13

(Dr. Dalton described Plaintiff as well-appearing and oriented and has having a euthymic mood,

normal affect, and unimpaired thought processes); R. at 454-55 (Nurse Practitioner Fretwell

observed no psychological symptoms and described Plaintiff's appearance as normal; alert,

oriented as to time, place, and person; and in no acute distress); R. at 428 (Dr. Sarver found no

motoric indications of depression or anxiety). Even Dr. Griffith did not observe indications of

anxiety and arrived at his diagnoses and opinions based upon Plaintiff's self-reported symptoms,

which the ALJ found to be not credible. (R. at 487-89.)

     Plaintiff's assertion that the ALJ's erroneous weighing Dr. Griffith's opinion deprives her

materiality determination of substantial evidence fails to persuade. As a threshold matter, as set

forth above, it is Plaintiff's burden—not the ALJ's—to demonstrate materiality. Soc. Sec.

Ruling 13-2p, 2013 WL 621536, at *4. In her Statement of Errors, Plaintiff challenges the

ALJ's weighing of Dr. Griffith's opinion on the grounds that it is unclear whether she accorded

Dr. Griffith's opinion significant weight. (Pl.'s Statement of Errors 13–14, ECF No. 14.) The

Undersigned finds that to the extent the ALJ could be found to have committed any such error, it

is harmless. In considering Plaintiff's RFC based upon all of her impairments, including her

substance abuse disorder, the ALJ stated that she accorded Dr. Griffith's opinion "significant weight when considering the effects of [Plaintiff's] mental impairments, *especially substance abuse*." (R. at 16 (emphasis added).)  Later, within her materiality analysis, the ALJ makes clear that she assigned little weight to Dr. Griffith's opinion that Plaintiff has such severe limitations in the absence of her alcoholism and proceeds to offer numerous reasons for the weight assigned, including his failure to "adequately address the role of Plaintiff's alcohol problem." (R. at 28.) The ALJ also makes clear that she accorded Dr. Tessnear's opinion the "greatest weight" when considering Plaintiff's mental impairments in the absence of substance abuse. (*Id*.)  Thus, the Undersigned finds that it is clear is that the ALJ assigned little weight to Dr. Griffith's extreme opinion within the context of considering Plaintiff's limitations from her other impairments in the absence of her alcoholism.

Finally, Plaintiff's challenge to the ALJ's reliance upon Dr. Tessnear's opinion is waived because she advanced it for the first time in her Reply.  *See, e.g., Am. Trim, L.L.C. v. Oracle Corp*., 383 F.3d 462, 477 (6th Cir. 2004) (noting that the court has consistently held that it will not consider arguments raised for the first time in reply).  Regardless, the Undersigned notes that Plaintiff's argument lacks merit.  Plaintiff appears to submit that Dr. Tessnear's testimony upon cross-examination that it was "hard to say" whether the record reflected a period of sobriety to support that she would have an improved function without the influence of drug or alcohol renders his opinion unreliable.  As set forth above however, a finding of materiality is not required simply because the record does not reflect a period of sobriety or abstinence; rather, under such circumstances, the ALJ may rely upon the opinion of an acceptable medical source such as Dr. Tessnear regarding materiality.  Soc. Sec. Ruling 13–2p at Section 6.c.1, 2013 WL

621536, at *9.  Thus, in the event the Court considers Plaintiff's belated challenge to the ALJ's reliance upon Dr. Tessnear's opinion, it is recommended that the Court find the challenge to be without merit.

In sum, the Undersigned concludes that the record evidence constitutes substantial evidence supporting the ALJ's determination that Plaintiff failed to satisfy her burden to show that she suffered from disabling mental impairments in the absence of her alcoholism. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.      The ALJ's RFC Determination in the Absence of Her Substance Abuse Impairment**

Within this contention of error, Plaintiff relies upon *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), to argue that the ALJ's RFC failed to account for the moderate limitations in concentration, persistence, or pace that the ALJ found at step three of the sequential analysis.  Plaintiff contends that *Ealy* stands for the proposition that limiting a claimant to simple, repetitive tasks and instructions does not properly account for a claimant's moderate limitations in concentration, persistence, or pace.  (Pl.'s Statement of Errors 15–18, ECF No. 14.)  It appears that Plaintiff maintains that the ALJ should have also limited her to performing tasks in an environment without fast-paced production demands.  The Undersigned finds this contention of error to be without merit.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).

21

Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations she found credible.  The ALJ concluded that if Plaintiff stopped her substance abuse, she would have the following mental RFC: "The claimant should have only minimal contact with others, including the public, co-workers, and supervisors. The claimant requires repetitive simple work with few changes in routine."  (R. at 21.)  Contrary to Plaintiff's assertion, the ALJ's decision does not reflect that the ALJ credited evidence that would support a finding that Plaintiff had pace limitations on her ability to perform unskilled, simple, and repetitive tasks.  Significantly, the ALJ's RFC essentially adopting the RFC finding of reviewing physician Dr. Tessnear, who the ALJ accorded the greatest weight.  (R. at 19.)  Dr. Tessnear opined that "in terms of concentration, persistence and pace . . . there may be some mild to moderate impairment," but that Plaintiff "would be capable of at least simple, repetitive types of job activities" and that she would not have any problems with work stressors so long as she was limited to simple, repetitive types of work activity involving minimal interactions with others.  (R. at 66.)  In light of the foregoing, the Undersigned concludes that the limitations the ALJ incorporated into the RFC adequately addressed the moderate limitations in concentration, persistence, or pace that she and the medical sources found.

*Ealy*, the case upon which Plaintiff relies, is distinguishable.  On this point, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), is instructive.  The *Smith-Johnson* Court analyzed the very same argument Plaintiff advances here as follows:

> Smith–Johnson's first challenge concerns her concentration, persistence, or pace.  She relies on *Ealy*, 594 F.3d 504, to support her argument that more specific limitations should have been included in the hypothetical to the VE.  Yet, *Ealy* is distinguishable from this case.  In *Ealy*, the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical."  *Ealy*, 594 F.3d at 516.  In that RFC assessment, however, the ALJ

22

included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings."  *Id.*  That RFC finding was included in the hypothetical to the VE. *Id*. This court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions.  *Id*.

Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability "to maintain attention and concentration for extended periods."  Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks.  Instead, Dr. Kriauciunas plainly determined that Smith–Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods."  In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations.  The ALJ thus did not fail to include a restriction on her ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting her to routine and repetitive tasks.

579 F. App'x at 436–37.  Here, Dr. Tessnear, like Dr. Kriauciumas in *Smith-Johnson*, did not place functional limitations on Plaintiff's ability to maintain pace when performing simple, repetitive, or routine tasks.  Given that the ALJ did not find that Plaintiff had non-exertional limitations greater than those set forth by Dr. Tessnear, *Ealy* does not undermine the Undersigned's conclusion that substantial evidence supports the ALJ's RFC determination.  Accordingly, Plaintiff's second contention of error lacks merit.  It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

23

## VIII.    PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date:  June 25, 2015                                            */s/ Elizabeth A. Preston Deavers*
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge